# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **SHANNON MONIQUE GIBSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:12-CV-3901-VEH** |
| | ) |
| **VALLEY AVENUE DRIVE-IN** | ) |
| **RESTAURANTS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Shannon Monique Gibson ("Ms. Gibson"), who is proceeding without an attorney, initiated this job discrimination case on November 19, 2012, against Defendant Valley Avenue Drive-In Restaurants, LLC ("Valley").  (Doc. 1). Ms. Gibson's lawsuit asserts that Valley discriminated against her on the basis of gender. (*See* Doc. 2 at 1 ("Ms. Gibson is asserting a discriminatory discharge claim on the basis of gender against her former employer and that it likely has subject matter jurisdiction over this matter.")).

Pending before the court is Valley's Motion for Summary Judgment (Doc. 38) (the "Motion") filed on September 23, 2013, and supported by a brief (Doc. 39) filed

on that same date.  Because Ms. Gibson is representing herself, the court gave her express notice and an explanation of Rule 56 of the Federal Rules of Civil Procedure consistent with the requirements set forth in *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  (Doc. 40 at 1-3; *id.* at 4).[1]

The order also advised Ms. Gibson of her obligation to comply with Appendix II of the court's Uniform Initial Order when filing her response to the Motion.  (Doc. 40 at 1 ("It does <u>not</u> change any of the requirements of Appendix II to the court's Uniform Initial Order (Doc. 10), which was previously entered in this case on February 8, 2013.")).  Finally, the order expressly established October 24, 2013, as the deadline for Ms. Gibson to oppose the Motion.  (Doc. 40 at 2).

Ms. Gibson responded to Valley's Motion on October 24, 2013.  (Docs. 41, 42).  Valley followed with its reply (Doc. 44) on November 7, 2013.  Accordingly, the Motion is now ripe for disposition.

For the reasons explained below, Valley's Motion is due to be granted, and Ms. Gibson's lawsuit is due to be dismissed with prejudice.

---

[1] All page references to Doc. 40 correspond with the court's CM/ECF numbering system.

## II.   FACTUAL BACKGROUND[2]

Ms. Gibson is a former employee of Valley.  Ms. Gibson was employed by Valley as a carhop for its Sonic Drive-In ("Sonic") located at 313 Valley Avenue, Birmingham, Alabama  35216.  (Doc. 1-1 at 3).[3]

On March 8, 2012, Ms. Gibson asked one of Sonic's Assistant Managers, Katrina Watkins ("Ms. Watkins") if she could be relieved from working the drive-through window.  (*See* Doc. 38-2 at 35 at 136 ("I had already been working through the [line] – it was [another female employee's] turn to take over the drive[-]through.")).[4] Although Ms. Watkins denied this request and instructed Ms. Gibson "to continue to take orders from the drive[-]through [window] until the line got down[,]" (Doc. 38-2 at 35 at 136), Ms. Gibson, nevertheless, left the line of customers waiting and walked out of the restaurant into the parking lot without telling Ms.

_____

[2]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3]  All page references to Doc. 1-1 correspond with the court's CM/ECF numbering system.

[4]  All primary page references to Doc. 38-2 correspond with the court's CM/ECF numbering system.  All secondary page references to Doc. 38-2 correspond with the page number of Ms. Gibson's deposition transcript.

Watkins.  (*See id.* at 137 ("We had a misunderstanding and I became upset about it because I felt like I was being treated unfairly.  I stepped outside."); *id.* at 36 at 139 ("I walked outside.  I didn't tell her.")).

When Ms. Gibson returned inside, she learned that Ms. Watkins had clocked her out.  (*See id.* Doc. 38-2 at 35 at 136 ("When I came back in, Justin told me that I had been clocked out.")).  Ms. Gibson then became angry and called Ms. Watkins a bitch.  (*See* Doc. 38-2 at 36 at 141("I called her a bitch.  I did.")).  Although Ms. Gibson had the opportunity to clock back in and continue working on March 8, 2012, she decided not to do so.  (*See* Doc. 38-2 at 36-37 at 141-42 (Ms. Gibson's acknowledging that she could have clocked back in if she wanted to work for the rest of her shift that night)).

Her employment ended one day later on March 9, 2012.  (*See* Doc. 38-5 at 7 (letter of resignation from Ms. Gibson indicating that, as of March 9, 2012, she "will no longer be an employee of Sonic Drive-In on Valley Ave. due to discrimination, unfairness, and the hostile environment") (emphasis omitted)).[5]  Prior to turning in her resignation letter to the general manager, Tabatha Yee ("Ms. Yee") on March 9, 2012, Ms. Gibson maintains that Ms. Yee told her that she was fired.[6]  (*See* Doc. 38-2

---

[5]  All page references to Doc. 38-5 correspond with the court's CM/ECF numbering system.

[6]  Valley disputes this fact and contends that Ms. Gibson voluntarily resigned.  However, Valley also acknowledges that for the purposes of summary judgment, this court must accept Ms.

at 37 at 144 ("And the next day before I gave [the letter] to Tabatha, she told me we have already decided to let you go, but I still gave her my letter.")).

Ms. Gibson asserts that, while she was employed by Valley, the company discriminated against her on the basis of gender. (*See* Doc. 1 at 4-5 ("While I was employed, I was discriminated against due to my gender."); *see also* Doc. 1-1 at 3 ("CHARGE OF DISCRIMINATION" dated March 19, 2012, marking sex discrimination box)).

## III.    STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 56(c)); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes

Gibson's version of events. (*See* Doc. 39 at 20 ("Accepting for the purposes of this motion that Defendant did terminate Plaintiff . . . .")).

demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553 ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, . . . .").  Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553.

The substantive law will identify which facts are material and which are irrelevant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("As to materiality, the substantive law will identify which facts are material."); *see also Chapman*, 229 F.3d at 1023 (same).  "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)); *Chapman*, 229 F.3d at 1023 (same).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *Chapman*, 229 F.3d at 1023

6

(same).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511 (internal citations omitted).

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (setting forth applicable framework depending upon appropriate burdens of proof).  If the moving party bears the burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

7

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136-37, 119 L. Ed. 2d 351 (1992)).

Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of her claim, all other issues

of fact become immaterial and the moving party is entitled to judgment as a matter

of law.  *See Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552 ("In such a situation,

there can be 'no genuine issue as to any material fact,' since a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial."); *see also Bennett v. Parker*, 898 F.2d 1530, 1532

(11th Cir. 1990) (same).

As the Eleventh Circuit explained in *Bennett*:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case.  "In such a situation, there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.  Any "specific facts" pled in a *pro se* plaintiff's sworn

complaint must be considered in opposition to summary judgment.  *See Perry v.*

*Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in

his sworn complaint and they were required to be considered in their sworn form.").

## IV.   ANALYSIS

### A.   All of Ms. Gibson's gender discrimination claims fail.

A plaintiff in a Title VII case can attempt to prove her claims either through direct evidence of discrimination or, more commonly, by circumstantial evidence. As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [gender], . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) (footnote omitted).   "[F]acially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly probative of discrimination." *Id.* (citing *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988)).   Based upon this standard and, in the absence of Ms. Gibson's reliance upon any gender-related comments to support her claims, her case is purely a circumstantial evidence one.

As the Eleventh Circuit has described Title VII's circumstantial evidence model:

Circumstantial Evidence of Discrimination

In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.

10

d 207 (1981). Under this framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). A plaintiff establishes a *prima facie* case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. *See, e.g., McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). The methods of presenting a *prima facie* case are not fixed; they are flexible and depend to a large degree upon the employment situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984).

When the plaintiff establishes a *prima facie* case, which creates the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *See Rojas*, 285 F.3d at 1342; *Combs*, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254-55, 101 S. Ct. at 1094. If the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination. *Id.* at 255-26, 101 S. Ct. at 1094-95.

Despite the shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 256, 101 S. Ct. at 1093, 1095. A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. *See Reeves v. Sanderson Plumbing Prods.*, Inc., 530

U.S. 133, 147-48, 120 S. Ct. 2097, 2108-09, 147 L. Ed.2 d 105 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1336 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000).

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087-88 (11th Cir. 2004).

### 1. Ms. Gibson's discriminatory discharge claim fails.

Ms. Gibson's discriminatory discharge claim fails both prima facially and also with respect to her burden to show pretext. Ms. Gibson's *prima facie* case is deficient because she lacks evidence of any similarly situated male employees who, despite engaging in conduct comparable to her admitted actions, still remained employed by Valley. "In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (emphasis added).

During her deposition, Ms. Gibson confirmed that after her supervisor had denied her request to be relieved from working the drive-through window on March 8, 2012, Ms. Gibson, nevertheless, left the line of customers waiting and walked out of the restaurant into the parking lot without telling Ms. Watkins that she was leaving. When Ms. Gibson returned inside, she was told that Ms. Watkins had clocked her out.

Ms. Gibson then became angry and called Ms. Watkins a bitch.  Although Ms. Gibson had the opportunity to clock back in and continue working on March 8, 2012, she decided not to do so.

Against this backdrop, Ms. Gibson points to no male counterpart who, despite disobeying a supervisor's direct order, cursing at that supervisor, and choosing to leave the premises instead of returning to finish his scheduled shift, was retained by Valley, rather than being fired.  Further, Ms. Gibson points to no other proof from which a reasonable jury could conclude that either Ms. Watkins's treatment of her on March 8, 2012, or Valley's discharge of her on March 9, 2012, was improperly motivated by gender bias.

As for pretext, Valley has asserted it terminated Ms. Gibson's employment because of "her misconduct on the night of March 8, 201[2], including disobeying a supervisor, walking off the job, cursing the supervisor, and then leaving without finishing her shift."  (Doc. 39 at 18).  Ms. Gibson has admitted that she did all of these acts and has not adduced any proof which otherwise brings into question the legitimacy of Valley's explanation behind its decision to discharge her.  As a result, summary judgment in favor of Valley on Ms. Gibson's discharge claim is alternatively appropriate because she has not satisfied the pretext prong of a circumstantial case of discrimination.

### 2.   Ms. Gibson's other complaints about Valley's alleged discriminatory treatment of her fail.

To the extent that Ms. Gibson has attempted to assert other actionable gender-based discrimination connected to Valley's conduct beyond her disputed dismissal, such claims fail because she is unable to meet the adverse action component of a *prima facie* case.

As the United States Supreme Court has summarized the meaning of a <u>tangible employment action</u>:

> The concept of a tangible employment action appears in numerous cases in the Courts of Appeals discussing claims involving race, age, and national origin discrimination, as well as sex discrimination. Without endorsing the specific results of those decisions, we think it prudent to import the concept of a tangible employment action for resolution of the vicarious liability issue we consider here. <u>A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits</u>. *Compare Crady v. Liberty Nat. Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (C.A.7 1993) ("A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation"), *with Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (C.A.7 1994) (a "bruised ego" is not enough), *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (C.A.6 1996) (demotion without change in pay, benefits, duties, or prestige insufficient), *and Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (C.A.8 1994) (reassignment to more inconvenient job insufficient).

> When a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation. <u>A tangible employment action in most cases inflicts direct economic harm</u>.

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761-62, 118 S. Ct. 2257, 2268-69, 141 L. Ed. 2d 633 (1998) (emphasis added).

With the exception of her firing, nowhere does Ms. Gibson assert that she has suffered financially or in some other serious and material manner as a result of Valley's treatment of her.  As a result, no reasonable jury could conclude that Valley's pre-dismissal treatment of Ms. Gibson constitutes a tangible job detriment. Consequently, all of Ms. Gibson's gender discrimination claims made secondarily to the gravamen of her complaint for discriminatory discharge fail on a *prima facie* basis.

**B.    Ms. Gibson's alternative claims for retaliation and defamation suggested by way of her opposition to the Motion are ineffective on summary judgment.**

To the extent that Ms. Gibson's opposition brief contains arguments about retaliation and defamation (*see* Doc. 44 at 2 ("Plaintiff's opposition does suggest two new claims, retaliation and defamation.")), such claims, which have not been alleged by her in her initial Title VII application or in a subsequent pleading, are similarly subject to summary judgment.  The Eleventh Circuit has made it unmistakably clear

that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). *Gilmour* dealt with a plaintiff who was attempting to assert a new claim at the summary judgment stage. *Gilmour*, 382 F.3d at 1314-15.

Additionally, a more recent decision by the Eleventh Circuit cites to *Gilmour* and confirms that a district court's consideration of <u>any critical amendment</u> asserted merely as part of the briefing process is disfavored.[7]

> The current practice in some district courts—especially in the summary judgment setting—is to ignore what the respective parties alleged in their complaint and answer and to consider their claims and defenses as depicted in the memoranda they filed in support of or in opposition to a motion for summary judgment. As is the situation here, the claims and defenses presented in the memoranda supporting or opposing summary judgment are not presented in the complaint and answer with the specificity required by the Federal Rules of Civil Procedure and the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); rather, they are presented in a shorthand fashion. The result is that on appeal we have difficulty in determining whether the district court, in granting summary judgment, ruled on the claims and defenses as stated in the complaint and answer or as stated in the memoranda submitted to the court on summary judgment, as if the pleadings had been amended by implied consent.

---

[7] *But cf. Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1351 (11th Cir. 2007) (Hull, J.) (holding that district court abused its discretion by precluding at trial evidence and argument proffered by defendant on unplead affirmative defense).

We encountered this dilemma most recently in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 856, 184 L. Ed.2 d 656 (2013). <u>There, in their motion for summary judgment, the plaintiffs sought to eliminate a critical deficiency in the allegations of their amended complaint by including additional facts</u>. The defendants did not object to this tactic on the ground that the plaintiffs were, in effect, seeking to amend their complaint. And the district court, in ruling on the sufficiency of the complaint, appeared to have considered the additional facts as if they had been alleged in the complaint.  In affirming the district court's dismissal of the claim at issue, <u>we refused to consider these additional facts, citing precedent that precludes a plaintiff from amending its complaint "through argument at the summary judgment phase of proceedings."</u> *Id.* at 1258 n. 27. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

This court's precedent foreclosed Well–Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2).  Accordingly, the District Court should have disposed of Well–Come's claim with a statement that Well–Come failed to establish that ASRRG and ASIS issued a commercial general liability policy and excess/umbrella liability policy to Flintlock LLC, as alleged in paragraphs 6 and 7 of its complaint. We affirm the court's judgment on that ground.  *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir.2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

*Flintlock Const. Services, LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28

(11th Cir. 2013) (emphasis added).

Accordingly, the Motion is due to be granted as to all of Ms. Gibson's unplead

claims.

**V.** **CONCLUSION**

For all the reasons stated above, Valley's Motion is due to be granted.  The

court will enter a final judgment order consistent with this memorandum opinion

**DONE** and **ORDERED** this the 19th day of December, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge